UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Desmond Hinds,

                                        Plaintiff,

                    -Against-

County of Westchester, Village of Pleasantville,
New York, Town of Mt. Pleasant, New York,
Commissioner-Sheriff George N. Longworth,
Village of Pleasantville Former Police Chief
Anthony Chiarlitti, Town of Mount Pleasant
Police Chief Louis Alagno, Police Officer Aaron
Hess, Police Officer Ronald Beckley, Police
Officer Ronald Gagnon, Detective Marco A.
Mendoza, Detective Martin Greenberg, John
Doe, and John Does #1-30,

                                        Defendants.

11 CV _____

COMPLAINT

          Plaintiff Desmonds Hinds, by his attorney Bonita E. Zelman, as and for his

Complaint alleges upon information and belief as follows:

## INTRODUCTION

          1.    On October 17, 2010, plaintiff Desmond Hinds, was a 21 year old African

American and a senior attending Pace University where he played wide receiver on his

college football team.  He and his best friend Danroy (DJ) Henry, Jr. and their team had

played the Stonehill College football team the prior day for the homecoming game.  It

was about 1:00 AM when DJ, DJ's friend, Brandon Cox from the Stonehill team, and

plaintiff, were waiting in a fire lane outside Finnegan's Grill, a local restaurant, for two

other students to give them a ride home. They had all been celebrating homecoming

inside with their team members and other college students.   When DJ was told by

defendant police officer Ronald Gagnon to move their car, he moved slowly out of the

1

fire lane. Brandon Cox was in the front right passenger seat. Desmond Hinds was sitting in the rear passenger seat.   Defendant Aaron Hess jumped in front of their vehicle with his hands in a two hand hold combat stance as he began firing into the car full of students. Defendant Hess continued shooting into the car from the hood of the car. Desmond heard at least three shots ring out and saw the bullet holes in the windshield. Defendant Hess continued shooting into the car from the hood of the car. Desmond can't ever forget DJ's last words as he was shot twice in the chest and once in the arm, DJ said: "They shot me.  They shot me".

2.      The car came to rest at the side of the road with DJ Henry slumped in the seat in a pool of blood.   Brandon Cox was shot in the left arm and two bullets had barely missed striking plaintiff. Although DJ Henry was still alive, the police did not immediately attend to his bullet wounds and instead handcuffed him behind his back and left him bleeding to death on the pavement. Brandon Cox was also handcuffed and deprived of immediate medical attention.  Plaintiff was forcibly dragged from the rear passenger seat by a white police officer and slammed violently to the pavement causing him to sustain severe head trauma where he was handcuffed behind his back. Plaintiff turned his head to the white officer and said: "Officer we did absolutely nothing wrong." The white officer then pressed his gun to the back of plaintiff's head, told plaintiff to "Shut the f- - k up", and then he slammed plaintiff's head back into the pavement.  Plaintiff feared for his life and believed the officer would shoot him too.  This officer is named as defendant "John Doe", a white uniformed police officer (whose identity is unknown at present). Defendant "John Doe" then handcuffed plaintiff behind his back.

3.      The shooting and brutality was lawless and without basis: The

African-American young men were following police instructions to leave a fire lane, when defendant Hess jumped in front of a moving car and then he and defendant Ronald Beckley intentionally and deliberately began shooting into a car full of students. Plaintiff and his friends DJ Henry and Brandon Cox in the car were all unarmed, were not fleeing felons and presented no threat whatsoever to anyone to warrant the deadly force inflicted upon them.

4.      While he was handcuffed behind his back and lying in the gutter, plaintiff could see his friend DJ's body from the waist down, also in the gutter. DJ's feet were facing down and his body was just twitching. Plaintiff was the thrown in the back seat of a marked police vehicle and left there for about 2 hours. He was then taken by police to the Town of Mount Pleasant Police Department where he was handcuffed for hours to a wall while seated on a bench. Plaintiff kept asking every police officer he saw about the condition of his friend DJ but they said they had no idea although they all knew he had died.

5.      Desmond complained that his head hurt but was not given any medical attention. After hours of being handcuffed to a wall, plaintiff was taken into a back room where he was wrongfully interrogated in custody by defendants, Detective Marco A. Mendoza and Detective Martin Greenberg, of the Town of Mount Pleasant Police Department, who did not read him his rights. He was not released from the Town of Mount Pleasant Police Department until approximately 8:30 AM.   As he left the precinct he read an instant message on his cell phone: "Rest in peace DJ."

6.      Plaintiff was unarmed, had committed no crime or offense when he was brutally and viciously slammed to the pavement by the defendant white police officer, John Doe, and threatened by that defendant with imminent use of deadly physical

3

force, wrongfully detained and then interrogated and intimidated by defendants Mendoza and Greenberg.

7.      Plaintiff was falsely arrested and detained in custody without a scintilla of evidence of any wrongdoing, probable cause, justification or excuse.

8.      Defendants John Doe and  John Does #1-30 witnessed these criminal events and actions of the defendant Hess and the other assaulting officers, but failed or refused to intervene, though they had the obligation and opportunity to do so.

9.      Plaintiff also suffered great trauma from witnessing the murder of his good friend, DJ Henry, who was killed by defendant Hess.  He was also caused to suffer pain and physical and emotional injury as a result of defendant John Doe's unlawful threat of deadly force against him, the use of excessive physical force on him, the assault and battery on him and the false arrest and detention.   He also suffered as a result of the wrongful detention and interrogation of defendants Mendoza and Greenberg, and the failure by all defendants to obtain immediate medical care for his injuries received as a result of the actions of defendants.

10.      This is a civil rights action seeking damages for the violations by defendants of plaintiff's rights, privileges, and immunities under the United States Constitution and the Civil Rights Act of 1871, 42 U.S. C. § 1983, and New York State common law.

11.      This is one of nine related lawsuits brought on behalf of college students who attempted to aid their friend DJ Henry after he was shot by defendant Hess and who were brutalized, some tasered and beaten, falsely arrested, maliciously prosecuted and/or threatened with the use of deadly physical force on October 17, 2010 by various members of different responding police forces including the police departments of

4

defendant-municipalities.

## PARTIES

12.    Plaintiff Desmond Hinds is a 22 year old African-American graduate student who resides in Stamford, Connecticut.

13.    Defendant, County of Westchester is a county in New York State, which, at all relevant times, employed Westchester County Department of Public Safety police officers, John Does # 1-10 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.

14.    Defendant Village of Pleasantville, New York, is a municipality within the County of Westchester, State of New York which, at all relevant times, employed Village of Pleasantville police officers, John Does # 11-20 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendant Hess as a police officer.

15.    Defendant Town of Mount Pleasant, New York, is a  municipality within the County of Westchester, State of New York employed Town of Mount Pleasant police officers, John Does # 21-30 (currently unidentified) who were at the scene of the shooting and who committed and/or participated in the wrongful acts alleged herein and/or acted in concert with the named defendants and/or did nothing to prevent defendants' illegal acts.  It may sue and be sued and, at all relevant times, employed defendant Beckley as a police officer and defendants Mendoza and Greenberg as

5

police detectives.

16.     Defendant, Commissioner-Sheriff George N. Longworth, is and was at all relevant times, employed as the police commissioner of the defendant, County of Westchester and the head of the Westchester County Department of Public Safety, and as such said defendant was acting as their agent, servant, and/or employee, and within the scope of his employment as such.

17.     Defendant Anthony Chiarlitti, was at all relevant times, the Village of Pleasantville Police Chief, acting in said capacity as the Village of Pleasantville's agent, servant, and/or employee, and within the scope of his employment as such.

18.     Defendant Louis Alagno, is and was at all relevant times, the Mount Pleasant Police Chief, acting in said capacity as the Town of Mount Pleasant's agent, servant, and/or employee, and within the scope of his employment as such.

19.     Defendant Aaron Hess is a white police officer who, at all relevant times, was employed by the Village of Pleasantville, New York.  At all times relevant hereto, defendant Hess was acting in his capacity as the Village of Pleasantville's agent, servant, and employee, and within the scope of his employment as such.

20.     Defendant Ronald Beckley is a white police officer who, at all relevant times, was employed as a police officer for the Town of Mount Pleasant, New York. At all times relevant hereto, defendant Beckley was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

21.     Defendant Marco A. Mendoza is a white detective, who, at all relevant

6

times, was employed as a detective for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Mendoza was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

22.     Defendant Martin Greenberg is a white detective, who, at all relevant times, was employed as a detective for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Greenberg was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

23.     Defendant Ronald Gagnon is a white police officer, who, at all relevant times, was employed as a police officer  for the Town of Mount Pleasant, New York.   At all times relevant hereto, defendant Gagnon was acting in his capacity as the Town of Mount Pleasant's agent, servant, and employee, and within the scope of his employment as such.

24.     Defendant "John Doe" is a white police officer, who, at all relevant times, was employed as a police officer for the a police department within the County of Westchester, the identity of whose particular police department is unknown at present. At all times relevant hereto, defendant "John Doe" was acting in his capacity as the agent, servant, and employee, and within the scope of his employment as a police officer within such county, of such police department.

25.     Defendants Hess, Beckley, Gagnon, Mendoza and Greenberg along with defendants John Doe and John Does # 1-30 (all of whom were Town of Mount Pleasant

police officers, Village of Pleasantville police officers, and Westchester Department of Public Safety police officers) are collectively referred to herein as the "defendant officers".

## JURISDICTION AND VENUE

26.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § § 1983 and 1988 and New York state common law.

27.     The jurisdiction of this Court is predicated upon 28 U.S.C. § § 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction. This Court also has diversity jurisdiction pursuant to 28 U.S. C. § 1332 because plaintiff Desmond Hinds resides in Connecticut, and, upon information, and belief, all defendants reside in New York, and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

28.     The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

29.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

30.     At approximately 1:00 A.M. on October 17, 2010, DJ Henry and Brandon Cox left Finnegan' s Grill, and DJ Henry pulled his car into the fire lane near the restaurant.  Plaintiff, Desmond Hinds, got into the rear seat of DJ Henry's car and they then waited for two other friends to come out.

31.    While the young men were waiting, defendant officer Gagnon knocked on the driver's side window, gesturing for DJ Henry, the driver, to move out of the fire lane. DJ Henry immediately complied with Officer Gagnon's direction.

32.    As DJ Henry drove away slowly, defendant Hess suddenly entered the roadway and he jumped in front of their moving vehicle with his gun drawn in a two handed combat stance pointing his gun at their car and immediately began shooting at them.

33.    Defendant Hess fired additional shots from the hood of the vehicle.  He shot DJ Henry twice in the chest and once in the arm, shot Brandon Cox in the arm, and he narrowly missed shooting plaintiff Desmond Hinds.

34.    Defendant Hess had no reasonable basis to stop or seize or jump in front of the moving vehicle.  Plaintiff was unarmed, had committed no crime or offense when he and his friends in the car were brutally and viciously attacked by defendant Hess and the other white police officers who either joined or failed to stop the criminal and unlawful actions of defendant Hess and other white police officers attacking and brutalizing plaintiff and his friends.  No exigency caused police defendant officer Hess to stop or shoot at DJ Henry's vehicle which was full of unarmed college students.

35.    Defendant Beckley also fired his weapon at the students. Defendant Beckley had no justification for the use of deadly physical force and shoot at the unarmed students. No exigency caused police defendant officer Beckley to stop or shoot at DJ Henry's vehicle which was full of unarmed college students.

36.    Plaintiff was falsely arrested and detained in custody without a scintilla of

evidence of any wrongdoing, probable cause, justification or excuse.

37.    Standard police policy and protocol prohibits police from firing their weapons at the occupants of moving vehicles for the obvious safety of the public.

38.    Plaintiff was terrified and just barely dodged police bullets fired at the innocent students.

39.    Plaintiff Desmond Hinds believes that both defendants Hess and Beckley intended to kill him and the other students in the vehicle by aiming and firing their weapons directly at the students in the car.

40.    Plaintiff Desmond Hinds also suffered great trauma from witnessing both the murder of his best friend, DJ Henry, who was killed by defendant Hess, as well as the shooting of Brandon Cox and the brutality committed on him.

41.     After the shooting, the defendants failed to obtain prompt medical attention for DJ Henry, who had been shot twice in the chest and once in the arm, or for Brandon Cox or for plaintiff, even though they suffered serious medical conditions.

42.    The defendant officers knew that there was a substantial risk of death or serious harm if the shooting victims, DJ Henry and Brandon Cox, did not receive medical attention for their bullet wounds, nevertheless the defendant officers were and acted indifferent to this risk.

43.    Defendant officer, "John Doe" (whose name is unknown at present) forcibly dragged plaintiff from the rear seat of the vehicle and then slammed him violently to the pavement causing him to sustain severe head trauma.  Said defendant officer, handcuffed plaintiff behind his back.  When plaintiff turned his head toward the

10

officer and said: "Officer we did absolutely nothing wrong" the officer said "Shut the
f - - k up" as he pointed the gun at the back of Desmond Hinds' head.  Then defendant
slammed plaintiff's head back into the pavement.  He then left the terrorized handcuffed
plaintiff, lying in the street, not knowing the fate of his friend DJ Henry.  Plaintiff could
see DJ Henry's body lying face down in the street and his body twitching.

44.     Eventually, unknown defendant officers, named herein as "John Does # 1-
30", threw plaintiff into the rear seat of a police vehicle and left him there again without
obtaining prompt medical attention for his head injuries .

45.     Plaintiff was falsely arrested and detained in custody without a scintilla of
evidence of any wrongdoing, probable cause, justification or excuse.

46.     Defendants Gagnon, John Doe and John Does #1-30 witnessed these
criminal events and actions of the defendant officers, but failed or refused to intervene,
though they had the opportunity to do so.

47.     When an ambulance did arrive, defendants told the ambulance personnel
to treat defendant Hess first and not the more critically injured shooting victim, DJ
Henry.

48.     As a result of defendants' denial of medical care to plaintiff, he sustained
pain and suffering from the head trauma and concussion.

49.     Plaintiff was kept handcuffed and in custody from approximately 1:20 A.M.
until approximately 8:30 AM on October 17, 2010 when he was finally released by
defendant Mount Pleasant police department.

50.     Ultimately, plaintiff was not even charged with a single crime after his

11

false arrest, detention and wrongful interrogation.

51.     Prior to this incident, Westchester County had already been placed on notice that its police officers had exhibited a pattern and practice of excessive and unlawful use of force and deadly physical force on racial minorities; and that it had to train its officers on justification and the lawful use of force, as well as on diversity, racial bias and racial profiling.

52.     The Westchester County Police Academy trains all police officer recruits for each of the forty-three (43) separate municipal police departments within Westchester County.

53.     However, in-service training typically occurs within the respective police departments and is delivered by their own personnel.

54.     As a result there are forty-three (43) different in-service training programs operating within the County of Westchester.

55.     Therefore, within the County of Westchester, there exists no uniform "use of force training" program, lesson, or materials used to instruct police officers on the proper use of physical and deadly physical force (as defined in the Article 35 of the New York State Penal Law).

56.     On or about December 3, 2005, a Yonkers resident and high school basketball star, Dequan Massey, was arrested when he was helping his mother, Dara Massey, put out old unwanted furniture to be picked up by sanitation.

57.     Dequan Massey was charged with "attempted illegal dumping".   When his mother, Dara Massey, plead with the police to let her son go, an officer punched her in

12

her face and she was beaten by five police officers who falsely arrested her.  Upon information and belief, Dara Massey was found "not guilty".

58.     On or about March 3, 2007, Irma Marquez, a 44-year-old Latina and a resident of Westchester County, suffered severe injuries in a Yonkers bar at the hands of the Yonkers Police Department.

59.     Ms. Marquez alleged in her federal civil complaint that at approximately 2:00 A.M., Yonkers police were called to LaFonda Bar in Yonkers to respond to a report that a woman, Ms. Marquez's niece, was unconscious and in need of medical assistance.  In her Federal complaint filed against the officers she alleged that when she leaned over to observe the paramedics assisting her niece, an officer pinned her arms to her side, lifted her off the floor and "drove her body, face first, into the ceramic tile floor of the restaurant. "

60.     Officer Christopher Ridley, a 23-year-old African-American off-duty police officer for the City of Mount Vernon, was shot and killed by white police officers on January 25, 2008.

61.     Stanley Ridley (the father of Officer Ridley) filed a Federal civil complaint on April 10, 2009 against Westchester County District Attorney Janet DiFiore, four (4) on duty police officers, Commissioner Thomas Belfiore, Medical Examiner Millard Hyland, County Executive Andrew Spano, and the County of Westchester.

62.     Felita Rucker-Bouche (the mother of Officer Ridley) filed a Federal civil complaint on April 20, 2009 against Westchester County, Westchester County Department of Public Safety, the four (4) police officers, the City of Mount Vernon, the

City of White Plains and Volunteers of America- Greater New York, Inc.

63.     Stanley Ridley alleged that Officer Olivieri shot his son, Officer Ridley, at point blank range above his left eye after Officer Ridley had fallen from the earlier shots.  The medical report indicated that powder burns were left on Officer Ridley's forehead indicating a close range kill type of shooting.

64.     Stanley Ridley described the killing of his son as " . . . a self-evidently racist murder of an African-American police officer by a Caucasian county police officer."  The Ridley complaint alleges racial animus: " .. . The murder of Officer Ridley by Oliveri, a Caucasian apparently motivated by racial animus, was not justifiable, but instead was a brutal execution."

65.     On February 3, 2010, Sergeant Kenneth Kissiedu, an African-American 16 year veteran of the New York City Police Department was assaulted by two white Yonkers police officers, arrested and charged with Obstruction of Governmental Administration.

66.     Sergeant Kissiedu, was a Yonkers resident, and was on his way to the Bronx when he stopped at a Chase ATM at 10:42 P.M.  Two white police officers came upon the scene and yelled to him, "Yo, yo, yo, yo."

67.     Sergeant Kissiedu responded to the officers "Yo is not my name."  He was then assaulted on the spot and falsely arrested.

68.     On September 16, 2011, a jury found NYPD Sergeant Kissiedu "not guilty" of all charges brought against him by the Yonkers Police Department and the Westchester County District Attorney's Office.

14

69.     The U.S. Department of Justice has an ongoing investigation into the use of excessive force by Yonkers police officers according to The Journal News, June 1, 2009.

70.     Damon K. Jones, director of the Westchester Chapter of the National Black Police Association stated: "I really believe the D.A.'s office needs to step up and look into police misconduct, not just in Yonkers, but throughout Westchester County." The Journal News, June 1, 2009.

71.     Damon K. Jones also said on March 14, 2010 "Police brutality and misconduct are an ongoing occurrence in the poor Black and Latino communities in Westchester County. The Westchester NBPA considers this brutality and misconduct police CRIMINALITY."

72.     Following the shooting death on January 25, 2008, of police officer Christopher Ridley, by a white county police officer, a Panel to Review Use of Force Training (The "Panel") was commissioned by then Commissioner-Sheriff Thomas Belfiore of the Westchester County Department of Public Safety to "objectively and critically examine, assess and make necessary recommendations concerning "use of force" training conducted at, and under the direction of, the Westchester County Police Academy.

73.     On May 9, 2008, the Panel issued its "Final Report of the Panel" ("Final Report of the Panel") on their review of the "use of force" training at the Westchester County Police Academy.

74.     The purpose of the Panel was to undertake a comprehensive review of

"use of force" training of any type involving the deployment of any type of physical force by police officers in order to enhance the overall level of public safety in Westchester County.

75.     The above referenced Final Report of the Panel was made public two years and five months prior to the shooting death of DJ Henry and the brutality inflicted on numerous other students present and attempting to aid and comfort their fallen friend and teammate.

76.     The scathing Final Report of the Panel revealed gross inadequacies in both recruit training in use of force as well as in-service training on use of force throughout all the various Westchester County police departments.

77.     Accordingly, the Final Report of the Panel placed the defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, on notice that deficiencies in police training in use of force existed and needed to be addressed and corrected for the safety and welfare of the public.

78.     The Final Report of the Panel contained "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training".

79.     The Final Report of the Panel resulted in specific "Recommendations Regarding *Recruit Training* in Use of Force".

80.     The Final Report of the Panel resulted in specific "Recommendations Regarding *In-Service Training* in Use of Force".

81.     Upon information and belief, although the Panel recommended immediate implementation regarding many of these recommendations, defendants  County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, have failed to do so, thereby continuing to enforce, encourage and sanction a policy, practice and/or custom of illegal and unconstitutional use of police force and false arrest, particularly against racial minorities.

82.     Defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, acted with a callous, reckless and deliberate indifference to Daniel Parker's rights in that it failed to adequately discipline, sanction, train, retrain, investigate, supervise or otherwise direct police officers concerning the rights of citizens, in particular racial bias/profiling, diversity, and use of force, thereby causing, sanctioning and allowing the defendant officers in this case to wrongfully taser, arrest and maliciously prosecute plaintiff.

83.     The excessive use of brutal force on plaintiff, the assault and battery, the threatened imminent use of deadly physical force by placing a loaded gun to the back of plaintiff's head, the false arrest, and the restraint and detention lacked any lawful basis and probable cause, and wrongful detention and interrogation, were done maliciously, falsely, and in bad faith. The denial of immediate medical care lacked

lawful basis and was done maliciously, and in bad faith. Defendants acted in wanton and reckless disregard for the rights and safety of plaintiff.

84.     As a result of Defendants' conduct described above, including the use of excessive force, the violent assault, the threats of imminent use of deadly physical force by placing a loaded gun to the back of plaintiff's head, restraining, falsely arresting and denying medical care to plaintiff, plaintiff suffered serious physical and emotional injury, pain and suffering, concussion, shock, trauma, fear of impending death, loss of enjoyment of life, post traumatic stress disorder, emotional injury, mental anguish, humiliation and embarrassment, reputational injury, educational costs, medical costs, and other losses.

85.     Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants Town of Mount Pleasant, Village of Pleasantville, New York, and the County of Westchester.  At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.  This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
(Against the defendant officers)

86.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

87.     By the above, and by threatening plaintiff with deadly physical force, arresting plaintiff without probable cause, using excessive force against him, assaulting him, unreasonably seizing him, denying him immediate medical care, and/or failing to

18

intervene to prevent this conduct, the defendant officers deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

88.     Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments with Town of Mount Pleasant, Village of Pleasantville, New York, and County of Westchester.   Said acts by the defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendant officers acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. §1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

89.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages herein before alleged.

### SECOND CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

90.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

91.     Defendants Hess and Beckley, and the unknown defendant John Doe who dragged plaintiff from the car and smashed his head twice into the pavement and threatened to shoot him in the back of the head, were acting within the scope of their employment, and intentionally, willfully, and maliciously assaulted and battered plaintiff.

19

92.     Defendant John Doe, acting within the scope of his employment, intentionally, willfully, and maliciously battered plaintiff when he, in a hostile and offensive manner, pressed his gun at the back of plaintiff's head with the intention of causing fear, harm and apprehension to plaintiff.

93.     Defendants,  their officers, agents, and/or servants, acted in a hostile and offensive manner, with the intention of causing fear, harm and apprehension to plaintiff.

94.     Defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York,  as the employers of the defendant officers, are responsible for their wrongdoing under the doctrine of respondent superior.

95.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
False Arrest and False Imprisonment
(Against All Defendants)

96.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

97.     By the actions described above, the defendants falsely arrested, falsely imprisoned and detained plaintiff without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so and/or witnessed and failed to intervene in his false arrest and detention despite opportunity to do so. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated his common law rights guaranteed to him by the laws of the State of New York.

98.   Defendants, Village of Pleasantville, Mount Pleasant, and Westchester County, as the employers of the defendant officers are responsible for their wrongdoing under the doctrine of respondent superior.

99.   As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
(Violation of 42 U.S.C. §1983 Against Against County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno)

100.   Plaintiff repeats, reiterates and realleges each and every allegation contained herein above with the same force and effect as if hereinafter set forth at length.

101.   Defendants, County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno,  have violated the plaintiff's rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the US Constitution, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d), et seq., ("Title VI "), and the Constitution and laws of the State of New York.

102.   Said defendants have implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of unconstitutional excessive

21

use of force, false arrests and malicious prosecution of county residents, including

plaintiff, by their various police departments without justification, probable cause or due

process required under the Fourth and Fourteenth Amendments.

103.    In addition, this pattern and practice of unconstitutional excessive use of

force, false arrests and malicious prosecution by defendants, they have often used, and

continued to use, race and/or national origin, not probable cause as the determinative

factors in deciding to abuse individuals in violation of the Equal Protection Clause of the

Fourteenth Amendment.  The victims of such racial and national origin profiling are

principally Black and Latino males.

104.    The defendants widespread constitutional abuses have flourished as a

result of, and are directly and proximately caused by, policies, practices and/or customs

devised, implemented and enforced by the County of Westchester, Village of

Pleasantville, New York,  Town of Mount Pleasant, New York,  Commissioner-Sheriff

George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti,

Town of Mount Pleasant Police Chief Police Louis Alagno.

105.    Defendants have acted with deliberate indifference to the constitutional

rights of those who would come into contact with their police officers by:  (a) failing to

properly screen, train, re-train and supervise their officers;  (b) failing to adopt and

implement the recommendations regarding use of force training in the Final Report of

the Panel, dated May 9, 2008;  (c) inadequately monitoring their officers and their arrest

practices;  (d)  failing to sufficiently discipline their officers who engage in constitutional

abuses;  and (e) ratifying and failing to rectify these unconstitutional practices.

106.    As a direct and proximate result of the defendants failures to screen, train,

22

re-train and supervise its officers, numerous citizens have been subjected to unlawful use of force, false arrests, illegal searches and seizures, and malicious prosecutions, many times simply because of their race, including the plaintiff.

107.   The defendants' widespread abuses are also a direct and proximate result of their failures to properly and adequately monitor, discipline and take necessary corrective action against their officers who engage in, encourage or conceal unconstitutional practices. Among other things, these defendants knowingly, deliberately and recklessly have failed:

(a)   to take appropriate disciplinary action and necessary corrective measures against officers who have engaged in excessive use of force and/or unlawful arrests without probable cause;

(b)   to adequately monitor officers who have incurred a substantial number of civilian complaints, even in instances where the number of complaints should have triggered monitoring under established departmental guidelines;

(c)   to devise and implement appropriate oversight, disciplinary and remedial measures in the face of extensive evidence of police brutality and false arrest being made without probable cause by officers;

(d)   to institute a formalized process for the review and analysis of all "Use of Force Reports" that are prepared by its personnel, specifically for the identification of tactical issues that need to be included into future training courses;

(e)   to convene an administrative panel to review firearm discharges and deadly physical force incidents;

(f)   to take sufficient corrective and remedial action against its officers who

23

provide fabricated, false, or impermissible justifications for arrests; and

(g)     to take sufficient corrective, disciplinary and remedial action to combat the so-called "blue wall of silence," wherein its officers regularly conceal or fail to report police misconduct, *inter alia,* in sworn testimony, official reports, statements to the Special Investigations Unit, and in public statements.

108.    At all times material to this complaint, defendants had in effect *de facto* policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct committed herein in that its police officers were permitted to engage in racial profiling in exercising their police powers in targeting its minority victims for police brutality and illegal arrest without probable cause and in failing to ensure that laws are enforced impartially by its members assigned to patrol duties.

109.    These policies, practices and customs include, *inter alia*: *de facto* discrimination by officers who may be influenced by stereotypes resulting in race based false arrest and imprisonments; failure to enact and enforce a clear policy for the police providing that race, ethnicity, and national origin may not be considered at all by police members in exercising police discretion while investigating criminal acts; failure to ensure that police officers exercise reasoned discretion during criminal investigations; in ratifying police brutality and misconduct and false arrests, and thereby sending a message to its police force that unlawful conduct may be committed with impunity.

110.    In addition, defendants, having conducted studies which identified trends of racial profiling, use of excessive force, and illegal arrests, yet took no or inadequate measures to address, remedy and/or minimize such patterns; failed to conduct proper analysis of police data to discern unlawful patterns about individual arrests, particularly

about the race and ethnicity of citizens arrested and to use such information to institute corrective measures;  failed to make broader assessment of the circumstances of false arrests; undertook no procedure for identifying lessons learned in the review process so that it may improve training and introduce more effective police practices;  failed to hold those wrongdoers accountable; in the ongoing lack of transparency regarding police who engage in unlawful practices including false arrests particularly of African-American males and other minorities;  failed to put in place adequate investigation and review processes;  in the inadequate internal review process in instances where police commit brutality, and false arrests;  in the failure to adequately scrutinize police arrest practices;  in the failure to properly analyze statistics concerning of use of force and occurrences of false arrests which would suggest significant racial disparities in persons brutalized and falsely arrested;  in the failure to aggregate and analyze statistical data related to brutality and false arrest incidents which should include a wide range of facts including the race of persons falsely arrested;  in the failure to assess false arrests from a procedural and training perspective and impose discipline;  in targeting African-American males as victims of police brutality and false arrests.

111.  As a result of the foregoing, plaintiff was caused to suffer serious personal injuries, pain and suffering, trauma, a concussion and post concussion syndrome, and other bodily injuries, fear of impending death, post traumatic stress disorder, shock, loss of enjoyment of life, violation of his civil, constitutional and human rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom and damage to his reputation and standing within his community.

## FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983 - Violations of the Equal Protection Clause)

112.    Plaintiff repeats, reiterates and realleges each and every allegation contained in   preceding paragraphs as if set forth at length herein.

113.    Acting under color of state law, defendants have applied their arrest practices, including unlawful use of excessive force, lack of probable cause and the use of false arrest to cover up for their misconduct, against plaintiff, an African-American male and similarly situated individuals in an intentionally discriminatory and race-based manner.  Defendants have focused use of illegal arrest practices without warrant or probable cause in African-American and Latino communities.

114.    Defendants have acquiesced in, ratified and failed to check widespread violations of the constitutional rights of citizens, including plaintiff to be free from excessive force and unreasonable search and seizure because of his race.

115.    These constitutional abuses were and are directly and proximately caused by policies, practices and/or customs devised, implemented, enforced, encouraged, and sanctioned by the defendants, including: (a) targeted implementation of warrantless arrests without probable cause in communities of color; (b) the discriminatory failure to adequately and properly screen, train, support, and supervise its officers; (c) the discriminatory failure to adequately and properly monitor and discipline its officers.

116.    As a direct and proximate result of defendants' practices, plaintiff was deprived of his right to Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

26

**SIXTH CAUSE OF ACTION**
(Claims Under Title VI of the
Civil Rights Act of 1964, 42 U.S.C. §2000(d), *et seq.*
Against the Municipal Defendants)

117.   Plaintiff repeats, reiterates and realleges each and every allegation

contained in   preceding paragraphs as if set forth at length herein.

118.   The law enforcement activities described in this complaint have been

funded, in part, with federal funds.

119.   Discrimination based on race in the law enforcement activities and conduct

described herein are prohibited under 42 U.S.C. § 2000(d), *et seq.* The acts and

conduct complained of herein by the defendants were motivated by racial animus, and

were intended to discriminate on the basis of race and/or had a disparate impact on

minorities, particularly Blacks and Latinos.

120.   As a direct and proximate result of the above mentioned acts, the plaintiff

has suffered injuries and damages and has been deprived of his rights under the civil

rights laws.

**SEVENTH CAUSE OF ACTION**
Negligent Hiring, Training, Discipline, Supervision and
Monitoring and Retention of Employment Services
(Against defendants Village of Pleasantville, Mount Pleasant and County of
Westchester)

121.   Plaintiff repeats and realleges the foregoing paragraphs as if the same

were fully set forth at length herein.

122.   Defendant, County of Westchester, through its Department of Public

Safety, owed a duty of care to plaintiff to prevent the physical and mental abuse

sustained by plaintiff under the same or similar circumstances, a reasonable, prudent,

27

and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

123.   Defendant Village of Pleasantville, New York, through its police department, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

124.   Defendant Town of Mount Pleasant, New York, through its police department, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to plaintiff or to those in a like situation would probably result from this conduct.

125.   Upon information and belief, the defendant officers were unfit and incompetent for their positions as police officers.

126.   Upon information and belief, defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, knew or should have known through the exercise of reasonable diligence that the defendant officers were dangerous.

127.   Upon information and belief, the defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligence in hiring,

training, re-training, supervising, monitoring, disciplining, and retaining the defendant officers proximately caused plaintiff's significant physical and mental injuries.

128.    Upon information and belief, because of defendants County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Village of Pleasantville former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno, negligent hiring, training, re-training, discipline, supervision, monitoring and retention of the aforementioned defendant officers, plaintiff incurred significant physical and mental, injuries.

### EIGHTH CAUSE OF ACTION
Negligent Denial of Medical Care
(Against All Defendants)

129.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

130.    Defendants owed a duty of care to plaintiff.

131.    The defendant officers breached that duty of care by unreasonably denying plaintiff immediate medical care for his injuries.

132.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

133.    All of the foregoing occurred without any fault or provocation by plaintiff.

134.    Defendants, the County of Westchester, Village of Pleasantville, New York, Town of Mount Pleasant, New York, as the employers of the defendant officers, are responsible for their wrongdoing under the doctrine of respondent superior.

## NINTH CAUSE OF ACTION
Intentional/Reckless Infliction of Emotional Distress
(Against All Defendants)

135.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

136.    Defendants Hess and Beckley intentionally shot at and into DJ Henry's vehicle without cause, killing plaintiff's close friend and narrowly missing plaintiff. Plaintiff witnessed DJ Henry lying on the ground bleeding and his body twitching.  This conduct was extreme and outrageous.

137.    Defendants' officer John Doe's misconduct in threatening plaintiff with deadly physical force by pressing a gun to the back of his head, and slamming his head into the pavement twice,  was extreme and outrageous.

138.     As a result of defendants actions plaintiff suffered extreme and severe emotional distress.

139.    Defendants knew that such distress was substantially certain to result from their conduct or, at a minimum, were done in disregard of a substantial probability of causing severe emotional distress.

140.    Defendants County of Westchester is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

141.    Defendant Village of Pleasantville, New York, is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent superior.

142.    Defendant Town of Mount Pleasant, New York, is responsible for the wrongdoing of its agents, servants and/or employees, under the doctrine of respondent

superior.

143.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(A)    an order declaring that defendants' conduct violated plaintiff's rights as guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution;

(B)    an order granting compensatory damages in an amount to be determined at trial;

(C)    an order awarding punitive damages against defendants Commissioner-Sheriff George N. Longworth, Village of Pleasantville Former Police Chief Anthony Chiarlitti, Town of Mount Pleasant Police Chief Police Louis Alagno,  Hess, Beckley, Gagnon, and the unknown defendant police officers who assaulted and battered plaintiff in an amount to be determined at trial;

(D)    an order directing defendants County of Westchester, Village of Pleasantville, New York,  Town of Mount Pleasant, New York, Commissioner-Sheriff George N. Longworth, Town of Mount Pleasant Police Chief Louis Alagno, to adopt and implement the "Recommendations Regarding Guidelines, Policies and Available Resources in Use of Force Training", "Recommendations Regarding Recruit Training in Use of Force" and "Recommendations Regarding In-Service Training Use of Force" contained in the Final Report of the Panel to Review Use of Force Training at the Westchester County Police Academy issued May 9, 2008;

(E)    an order appointing a Special Master to oversee, monitor and insure the implementations contained in the Final Report of the Panel;

(F)    an order awarding plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

(G)    an order awarding such other and further relief as the Court may deem just and proper, together with attorneys' fees, interest, costs and disbursements of this action.


Dated: Lake Success, New York
        October 12, 2011

                                        Law Offices of Bonita E. Zelman

                                        By: *Bonita E. Zelman Esq.*
                                            Bonita E. Zelman, Esq. (BEZ4800)
                                            Attorney for plaintiff Desmond Hinds
                                            2001 Marcus Ave., Suite S-150
                                            Lake Success, N.Y. 11042
                                            516-616-0707