UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DESMOND HINDS,

                Plaintiff,

v.

COUNTY OF WESTCHESTER, *et al.*,

                Defendants.

No. 11-CV-7265 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Before the Court is a dispute between Bonita E. Zelman, Esq. and Paula Johnson Kelly, Esq. about disbursements properly reimbursable to Ms. Zelman from her representation of Desmond Hinds ("Plaintiff"). The outcome of this dispute may affect the amount owed from Ms. Zelman to Ms. Kelly under the Court's November 12, 2019 Order. (Order ("Fees Order") (Dkt. No. 494).) For the reasons that follow, the Court finds that Ms. Zelman is entitled to $41,000 in disbursements.

I. Background

Plaintiff was awarded a jury verdict of $200,000, composed of $150,000 against Defendant Aaron Hess ("Hess") and the Village of Pleasantville for assault and of $50,000 against Defendant Jacobsen ("Jacobsen") and the Town of Mount Pleasant for false arrest and assault and battery. (Verdict Form (Dkt. No. 438).) Plaintiff reached a post-judgment settlement for a total of $116,000, including $75,000 from Hess and $41,000 from the Town of Mount Pleasant. (Decl. of Bonita E. Zelman in Partial Opp. to Paula Kelly's Mot. for a Charging Lien ("Zelman Lien Decl.") 3 (Dkt. No. 484).)

Despite claimed expenditures of $152,557, Ms. Zelman agreed to seek reimbursement for disbursements of only $41,000, leaving a total net recovery of $75,000. (*Id.* at 4.) Consistent with her retainer, Ms. Zelman paid $50,000 to Plaintiff, leaving $25,000 in legal fees. (*Id.*) On Ms. Kelly's Motion for Attorney's Fees, (Not. of Mot. for Att'y's Fees (Dkt. No. 481)), the Court awarded 40% of the fees to Ms. Kelly and 60% to Ms. Zelman, (Fees Order).[1] The Court also ordered Ms. Zelman to provide information regarding her disbursements. (*See* Dkt. (minute entry for Nov. 12, 2019).)

On December 10, 2019, Ms. Zelman submitted a Declaration itemizing $114,930.65 in disbursements. (Dkt. Nos. 499, 499-1.) The Court via memo endorsement deemed this submission "insufficient," and ordered Ms. Zelman "to produce the documents that support these claims." (Dkt. No. 502.) On December 18, 2019, Ms. Zelman produced a second Declaration, which included supporting documents. (Zelman Decl.)

Ms. Kelly submitted an Affirmation opposing Ms. Zelman's submission on December 30, 2019. (Reply Aff. To Decl. and Exs. of Bonita E. Zelman, Esq. on Hinds Disbursements ("Kelly Aff.") (Dkt. No. 507).) Ms. Kelly argued that, while a portion of the costs were adequately proven, some lacked foundation, and others were incurred on behalf of seven separate plaintiffs, and not adjusted to reflect Hinds's portion of the benefits. (*Id.*)

Ms. Zelman replied via Declaration on January 21, 2020, (Zelman Reply Decl.), and submitted additional documentation, (Bonita E. Zelman Reply Decl. Ex. List of Disbursements ("Zelman Ex.") (Dkt. No. 513-1)).

---

[1] Ms. Zelman claims, and Ms. Kelly does not deny, that she has paid $10,000 to Ms. Kelly. (Decl. of Bonita E. Zelman ("Zelman Decl.") 2 (Dkt. No. 506); Reply Decl. of Bonita E. Zelman ("Zelman Reply Decl.") 3 (Dkt. No. 513).)

II.  Discussion

"Federal courts [] have independent authority to . . . determine attorney's fee disputes and regulate attorney's fee liens."  *Rivkin v. A.J. Hollander & Co., Inc.*, No. 95-CV-9314, 1996 WL 633217, at *2 (S.D.N.Y. Nov. 1, 1996) (collecting cases).  It is within the Court's discretion to "adjudicate a fee dispute after the dismissal of a lawsuit."  *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 101 (2d Cir. 2003).

Here, Ms. Zelman has provided documentation showing $42,429.59 in costs.[2]  This includes the following:

| Expense | Total Cost |
| --- | --- |
| Court costs (filing fee; service) | $592 |
| Accident reconstruction expert (Forensic Crash Specialists) | $14,610.32 |
| Video reconstruction expert (Refinery Forensic Investigations) | $2,250 |
| Medical experts (Dr. Rembar, Dr. Shields, medical records) | $7,024.93 |
| Police expert (13th Juror) | $3,571.43 |
| Video trial exhibits (VisuaLex) | $5,600 |
| Deposition fees (Court Reporting Assoc.; LegalLink; Legal Eye Digital) | $8,780.82 |
| Total | $42,429.50 |

Costs for the police expert and certain medical expert costs have been adjusted to reflect the pro rata share attributable to Plaintiff.  (Zelman Ex. 1, 11–12, 16–18.)  Ms. Kelly allows that these adjusted costs are legitimate.  (Kelly Aff. 7–8.)[3]  The Court agrees.

---

[2] Ms. Zelman's Declaration claims $55,090.99 in costs.  (Zelman Reply Decl. 3; Zelman Ex. 1–2.)  This discrepancy exists because the following appear to be unsupported by an invoice, check, or other indication of charge or payment: (1) an $11,448.98 payment to reimburse co-counsel for graphics and accident reconstruction expenditures, (Zelman Ex. 1); (2) $816.67 paid to Legal Eye Digital LLC for the April 30, 2013 deposition of Martin Greenberg, (*id.* at 2); and (3) $395.84 paid to Legal Eye Digital LLC for the September 30, 2012 deposition of Aaron Hess, (*id.*).

[3] The Court notes that Ms. Kelly slightly overstates the disbursements attributable to Dr. Rembar, and finds that Ms. Zelman's figures are supported by the record.  (*See* Zelman Ex. 13.)

Ms. Kelly likewise concedes that court costs and costs for the accident reconstruction expert are appropriately attributable to Hinds alone. (Kelly Aff. 4.) Again, the Court agrees.[4]

The following three categories of cost are in dispute: (1) the video reconstruction expert (Refinery Forensic Investigations), for which Ms. Kelly claims there is no foundation, (Kelly Aff. 6); (2) video trial exhibits (VisuaLex), which Ms. Kelly claims should be divided by seven to reflect Plaintiff's pro rata share, (*id.*); and (3) deposition fees (various), which Ms. Kelly claims should be similarly divided by seven, (*id.* at 4–6).

As to the video reconstruction expert, Ms. Zelman submits an invoice for $2,250, (Zelman Decl. 16), and an explanation that this is an expense for "[r]econstruction of [v]ideo [f]ootage taken at the scene of the shooting including by cell phone," (Zelman Ex. 1). Since Plaintiff's recovery was based, in part, on his role as a victim of the shooting, the Court finds that these disbursements were related to Plaintiff's case, and that Ms. Zelman may recover them.

To resolve the dispute regarding whether to apply a pro rata adjustment to Ms. Zelman's video trial exhibits and deposition fees, the Court looks to case law in the related context of attorney fee shifting statutes. In assessing fees for counsel of both successful and unsuccessful plaintiffs against defendants, "the threshold issue is whether the successful and unsuccessful [p]laintiffs' claims are sufficiently discrete that the hours expended on these claims can be divided on a claim-by-claim basis." *Hargroves v. City of New York*, No. 03-CV-1668, 2014 WL 1270585, at *15 (E.D.N.Y. Jan. 6, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)), *report and recommendation adopted*, 2014 WL 1271039 (E.D.N.Y. Mar. 26, 2014); *cf.*

---

[4] While Ms. Kelly agrees that $9,948.26 in accident reconstruction expert costs is appropriate, she notes that Ms. Zelman's initial submission included "no bill or proof . . . to substantiate the additional $4,662" in these costs. (Kelly Aff. 4.) Ms. Zelman's second submission includes checks to substantiate this amount. (Zelman Ex. 3.)

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) ("When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

Following from this principle, where counsel demonstrates that her work is relevant to a prevailing plaintiff, courts have generally opted not to adjust downward the cost of her time because that work was also relevant to one or more unsuccessful plaintiffs. *See, e.g.*, *Thomas v. City of New York*, No. 14-CV-7513, 2017 WL 6033532, at *7 (E.D.N.Y. Dec. 1, 2017) (declining to adjust fees for unsuccessful plaintiffs where depositions "focused on facts and legal issues relevant to all plaintiffs" (citations omitted)); *Hargroves*, 2014 WL 1270585, at *15 (same, but separately declining to award fees where "this time would likely not have been spent had the unsuccessful Plaintiffs not been part of the action"); *Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001) (noting that "the [c]ourt is not obliged to discount for the unsuccessful plaintiffs," and declining to do so because "all of the plaintiffs were interconnected with [a] common core of facts"); *cf. Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 518 (S.D.N.Y. 2010) (awarding fee for 40% of time in a case where 2/7 plaintiffs were successful, because "some of the additional time would have been required even if this had only been a two-plaintiff case" and "some of the proof offered for . . . [the] unsuccessful claims was relevant to the[] successful claims"), *modified on reconsideration*, No. 06-CV-593, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

While case law focuses on the calculation of fees, at least one court has reached a similar conclusion regarding taxing of trial and deposition costs to arguably unrelated defendants. *In re Omeprazole Patent Litig.*, No. 00-CV-6749, 2012 WL 5427849, at *3 (S.D.N.Y. Nov. 7, 2012)

5

(holding that "because the claims and defenses of each defendant in the litigation were inextricably intertwined, it is practically impossible to accurately divide the deposition or trial testimony into portions attributable to individual defendants" (alteration, record reference, and quotation marks omitted)).

The Court is aware of only one case that applies a pro rata adjustment like the one suggested by Ms. Kelly. There, the court awarded fees for work that was specific to the prevailing plaintiff, but applied a pro rata downward adjustment to work related to a *Monell* claim and to a disqualification motion, both of which were generally applicable to 31 plaintiffs. *See Matthews v. City of New York*, No. 01-CV-2739, 2003 U.S. Dist. LEXIS 16334, *18-19 (E.D.N.Y. Aug. 27, 2003). However, the key to this ruling appears to have been the court's view "that Matthew's counsel had 'manipulated' the number of actions." *Wise v. Kelly*, 620 F. Supp. 2d 435, 460 (S.D.N.Y. 2008). Here, as in *Wise*, the Court is not aware of any "allegation whatsoever that [p]laintiff's counsel ha[s] litigated this matter in a self-serving or manipulative way." *Id.* at 461. Thus, following the majority of the courts that have considered the issue, the Court will evaluate whether Ms. Zelman's disputed disbursements were related to common core facts relevant to Plaintiff's case.

As to the video trial exhibits, Ms. Zelman submits invoices for $5,600, and two checks reflecting the same amount, (Zelman Ex. 3, 14–15), and explains that these costs were for video exhibits for trial, (Zelman Ex. 1). Ms. Zelman does not describe the content of these video exhibits, but she does note that both the shooting and Greenberg and Mendoza's interrogation of Plaintiff were recorded. (Zelman Reply Decl. 1; Zelman Ex. 1.) In light of these video-recorded incidents, and because the claims made by various plaintiffs shared common, core facts, the

Court finds that these disbursements were relevant to Plaintiff's case, and that Ms. Zelman may recover them.

As to the deposition fees, Ms. Zelman submits invoices reflecting $8,780.12 charged by three vendors.  (Zelman Ex. 9, 19–36.)  The Court finds that depositions of Plaintiff, Hess, Jacobsen, and Ronald Beckley were taken on Plaintiff's behalf, since each of these individuals was named in Plaintiff's case.  (*See* Kelly Aff. 4.)  Each remaining deponent for which Ms. Zelman seeks reimbursement was also involved in Plaintiff's case: Martin Greenberg ("Greenberg") and Marco Mendoza ("Mendoza") interrogated Plaintiff, (Zelman Reply Decl. 1; Zelman Ex. 1–2; Second Am. Compl. ("SAC") 5 (Dkt. No. 222)); Ronald Gagnon ("Gagnon") initially encountered the car where the shooting occurred, in which Plaintiff was a passenger, (Zelman Ex. 1; SAC 2); and Stephen Van Ostrand and Ali Mourtada witnessed the shooting in which Plaintiff was a victim, (Zelman Ex. 1).  Indeed, Greenberg, Mendoza, and Gagnon were each named Defendants in Plaintiff's Second Amended Complaint.  (*See* SAC.)  Thus, the Court finds that these disbursements were related to Plaintiff's case, and that Ms. Zelman may recover them.

### III.  Conclusion

For the foregoing reasons, the Court allows Ms. Zelman's claim of $41,000 in disbursements and discharges Ms. Kelly's charging lien related to her representation of Plaintiff.

SO ORDERED.

DATED:   October 2, 2020
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

7